TONOPAH FRACTION MIN. CO. v. DOUGLASS et al.

(Circuit Court, D. Nevada. July 6, 1903.)

No. 749.

1. EQUITY PLEADING—BILL—STATEMENT OF PLACES OF ABODE OF PARTIES.

An allegation in a bill filed by a corporation that defendants are citizens and residents of the state in which the suit is brought, and nonresidents of another state, "where your orator resides," is a sufficient statement of the places of abode of the parties to satisfy the requirements of equity rule 20.

**2. Public Lands—Suit by Adverse Claimant—Pleading.**

A suit brought under Rev. St. § 2326, and the amendments thereto (2 Comp. St. 1901, p. 1431), in support of an adverse claim to mining ground filed in the land office, is a statutory proceeding in aid of the Land Department, and a continuation of the proceedings instituted in the land office. It may be in form a suit in equity or an action at law, as may be appropriate in the particular case; but, whatever its form, the pleadings are to be construed with reference to its purpose, which is to determine the applicant's right to a patent for the land in dispute, rather than by the strict rules of pleading. The statute not having prescribed the form of action or the requisites of the pleadings, it is competent for a state to legislate on the subject for the government of its own courts, and, while such legislation is not binding on a federal court in an equity suit, it may properly be followed by the court in determining the sufficiency of the pleadings. Following the statute of Nevada on the subject, as construed by the state courts, a bill by an adverse claimant in possession, in the nature of a bill to quiet title, which alleges in general terms that the land is a part of a mining claim of which plaintiff is the owner and in possession, and that it is claimed by defendant as a part of an overlapping claim subsequently located, is sufficient, without setting out the probative facts in support of plaintiff's title.

In Equity. On demurrer to bill.

The portions of the complaint in this suit to which the demurrer is directed are as follows:

(1) The complaint avers that the defendants are citizens and residents within the state of Nevada, and nonresidents of the state of New Jersey, "where your orator resides."

(2) That on "the 19th day of December, 1901, your orator and its predecessors in interest was, ever since has been, and now is, the owner (subject only to the paramount title of the United States), and in the actual, open, notorious, undisturbed, and uninterrupted possession and entitled to the possession of that certain mining claim, containing a lode of rock in place bearing gold, silver, and other valuable minerals, situate in the Tonopah mining district, county of Nye, state of Nevada, called the 'Big Tono Mining Claim' [particularly described by metes and bounds]. Your orator further alleges that C. K. Jarvis, Frank Naughton, Henry Good, and M. J. Laub, the grantors of the defendants above named, on or about the 6th day of June, 1902, wrongfully and unlawfully made a location of a so-called quarry placer claim called the 'Leona' [described by metes and bounds]. Your orator further alleges that the said so-called 'Leona' quarry placer claim on said 6th day of June, 1902, and ever since, has embraced and included therein a portion of said Big Tono lode mining claim [described by metes and bounds], containing a net conflict of 5.85 acres." It is further alleged in the complaint that the defendants on the 30th day of July, 1902, wrongfully and unlawfully filed an application for a United States patent for said alleged quarry placer claim in the land office at Carson City, Nevada, and caused the register of the said land office to give notice of said application for a patent by publication as required by law; that the first publication was made on the 9th day of August, 1902; "that your orator, during the sixty-days period of publication of the said notice of application for patent for said alleged Leona quarry placer claim, to wit, on the 8th day of October, 1902, filed in said land office, under oath, a protest and adverse claim to said application," and that its complaint was filed within 30 days after the filing of its protest and adverse claim; and further alleges "that the claim of said defendants made as aforesaid is without any right whatever, and that they have no estate, right, possession, right of possession, or interest in said conflict area, or any part or parcel thereof." The diversity of the citizenship of the parties and the value of the property, necessary to give this court jurisdiction, are also alleged.

To this complaint the defendants demurred upon six specified grounds, which may be discussed under two heads: (1) That a compliance has not been made in said bill with the requisites of rule 20 of the equity rules of this court, in this: that the defendants' residence or place of abode is not stated in said bill; (2) that said complaint does not state facts sufficient to constitute a cause of action, in this: that it does not appear therefrom that there is any necessary averment that this is a suit brought in support of their adverse claim, and that the character of the action is such that, if complainant is entitled to any relief at all, it has an adequate remedy at law.

K. M. Jackson, J. J. Kennedy, and Campbell, Metson & Campbell, for complainant.

W. B. Glidden, for defendants.

HAWLEY, District Judge (orally). The first point of the demurrer is purely technical, and is devoid of merit. The averment in the complaint is a sufficient compliance with rule 20, Equity Rules. 3 Desty's Fed. Prac. p. 172.

The second point—as to the character of the suit and sufficiency of the averments in the bill as to complainant's title, etc.—presents questions upon which there has been more or less diversity of opinions expressed by the courts. The authorities upon these questions are too numerous to review. Most of them are cited in 2 Lind. on Mines (2d Ed.) § 754; 1 Snyder on Mines, §§ 708–723; 14 Enc. Pl. & Pr. 20.

Does the complaint state facts sufficient to constitute a cause of action? To determine this, certain preliminary propositions must first be considered. What is the character of the action or suit? Is it an action at law, or a suit in equity? The allegations of the complaint, whether perfect or imperfect, show that it was the pleader's intention to bring the bill under the provisions of section 2326, Rev. St., and amendments thereto (2 Comp. St. 1901, p. 1431), in support of the adverse claim (Bennett v. Harkrader, 158 U. S. 441, 447, 15 Sup. Ct. 863, 39 L. Ed. 1046; Perego v. Dodge, 163 U. S. 160, 16 Sup. Ct. 971, 41 L. Ed. 113), and its sufficiency must be determined by the provisions of the statute. The state courts have usually recognized the right of parties to bring actions of this character at law, as well as in equity, to try the questions involved before a jury or before the court, although doubts upon this question have at different times been suggested. In Perego v. Dodge, supra, the court declared that it did not regard the act of March 3, 1881, c. 140, 21 Stat. 505 [U. S. Comp. St. 1901, p. 1431]—although it refers to what the jury should find in certain cases—as requiring all suits under section 2326 to be actions at law to be tried by a jury; and in the course of the opinion, after quoting section 2326, the court said:

"Thus the determination of the right of possession as between the parties is referred to a court of competent jurisdiction in aid of the land office, but the form of action is not provided for by the statute; and, apparently, an action at law or a suit in equity would lie, as either might be appropriate under the particular circumstances—an action to recover possession when plaintiff is out of possession, and a suit to quiet title when he is in possession."

1 Snyder on Mines, § 715, and authorities there cited.

The general consensus of opinion in the United States courts, especially in this circuit, is to the effect that the proceedings brought un-

der section 2326 to determine the question of the right of possession are of an equitable nature. Doe v. Waterloo Min. Co. (C. C.) 43 Fed. 219; Shoshone M. Co. v. Rutter, 87 Fed. 801, 804, 31 C. C. A. 223. But it does not necessarily follow that the strict rule of equity pleading should be applied with an iron hand to all such cases, or that complainant be compelled to set forth with clockwork precision every step he had taken in acquiring his title or right of possession to the mining ground in controversy, and to point out with unerring certainty the defects existing in the claim of the applicant for a patent, although, where it can with certainty be done, such a course might safely be followed, and the objections and exceptions of the nature and character here urged be avoided. The present suit is a proceeding of purely statutory origin, having its inception in the land office, not in the court where the suit is commenced; and the question of proper pleadings therein is one that ought to be controlled by the statutory provisions in regard thereto, keeping constantly in view the object, purpose, intention, and effect of the statute. In Wolverton v. Nichols, 119 U. S. 485, 488, 7 Sup. Ct. 289, 291, 30 L. Ed. 474, the court said:

"The proceedings in this case commenced by the assertion of the defendants' claim to have a patent issue to them for the land in controversy. The next step was the filing of an adverse claim by the plaintiffs in the land office; and the present suit is but a continuation of those proceedings, prescribed by the laws of the United States, to have a determination of the question as to which of the contesting parties is entitled to the patent. The act of Congress requires that the certified copy of the judgment of the court shall be filed in the land office, and shall be there conclusive. And we must keep this main purpose of the action in view in any decision made with regard to the rights of the parties."

The present suit is brought, not for the purpose of enabling the complainant to obtain a patent, but to prevent a patent from being issued to the defendants, on the ground that they have embraced within their application certain portions of mining land which the complainant is in possession of and entitled to. It will be observed that section 2326 expressly recognizes the possessory right to be the subject of litigation between competing claimants, subject to the usual jurisdiction of courts over real actions. It expressly provides that, whenever the claim of any locator is adversed, the proceeding before the Land Office Department "shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived." Gillis v. Downey, 85 Fed. 483, 487, 29 C. C. A. 286, 290. As section 2326 did not provide the form of action in such cases, the Legislature of this state in 1873 passed "An act concerning the determination of conflicting rights to mining claims in certain cases" (Laws 1873, p. 50, c. 6), which reads as follows:

"Section 1. In all actions brought to determine the right of possession of a mining claim, or metalliferous vein or lode, where an application has been made to the proper officers of the government of the United States by either of the parties to such action for a patent for said mining claim, vein, or lode, it shall only be necessary to confer jurisdiction on the court to try said action, and render a proper judgment therein, that it appear that an application for a patent for such mining claim, vein, or lode, has been made, and that

the parties to said action are claiming such mining claim, vein, or lode, or some part thereof, or the right of possession thereof." Cutting's Comp. Laws, § 3985.

This statute was evidently designed to supplement the provisions of section 2326. Under its provisions it is only necessary that the complaint in an adverse suit should substantially comply with its provisions, and it would be the duty of the court upon proofs submitted at the trial to determine which of the parties had the better right to the premises in controversy. The Supreme Court, in construing the state statute, has repeatedly held that it is not necessary for a plaintiff to set out specifically the character of his own title, or the alleged title of the defendants; that it is always sufficient simply to allege that plaintiff is the owner and in possession of the property, describing it, and that the defendants are unlawfully asserting a claim thereto adverse to him. 420 M. Co. v. Bullion M. Co., 9 Nev. 240, 248; Scorpion S. M. Co. v. Marsano, 10 Nev. 370; Golden Fleece M. Co. v. Cable Con. M. Co., 12 Nev. 312, 320, 321; Rose v. Richmond M. Co., 17 Nev. 25, 51–54, 27 Pac. 1105; Steel v. Gold Lead M. Co., 18 Nev. 80, 87, 1 Pac. 448.

Tested by the rules announced in these decisions, it is admitted that the complaint in this suit is sufficient, but the contention is that the rules are not applicable to an equity suit in the national courts. It is true that the equity jurisdiction of the national courts is not controlled by state legislation, and it may be admitted that, if the proceeding in this suit is to be determined by the strict rules of equity pleading, as applied to ordinary equity suits, the rule contended for by defendants should prevail. The decisions in the Supreme Court of this state are not referred to as being of any binding force upon this court, but for the persuasive reasoning therein contained, to the effect that the pleadings in adverse suits of this nature are to be controlled by the provisions of section 2326, and that the form of action in such proceedings is a proper subject of state legislation. In 1 Snyder on Mines, § 709, the author says "the best-reasoned cases hold that the statute makes no attempt to confer any new jurisdiction upon any court. It merely provides for the trial of the adverse claim and the rights of the parties to the land in dispute in a court of competent jurisdiction. The purpose of the statute is well reasoned out by the Supreme Court of Nevada in one of the cases just cited (420 M. Co. v. Bullion M. Co., supra), wherein it is held that the object of the law is merely to require that the parties institute such proceedings in the proper court as they might, under the different forms of action therein, elect, and which the local practice permits; no different jurisdiction or form of action being required by the federal statute." In 420 M. Co. v. Bullion M. Co., 3 Sawy. 634, 638, Fed. Cas. No. 4,989, the principles announced upon the question under discussion were in accordance with the views expressed by the Supreme Court in 9 Nev. 240.

The decisions of the Supreme Court of Nevada were cited by this court in the Union Mill & Mining Co. v. Warren, 82 Fed. 519, which was a suit in equity to quiet title to certain lands and water situate in Storey county. The bill alleged that the complainant is "the owner in fee in the possession and entitled to the possession" of the

lands and water right therein described, and the court held, as against a demurrer, that the complaint stated sufficient facts to constitute a cause of action; that an allegation in ordinary and concise terms of the ultimate fact that the plaintiff is the owner in fee is sufficient, without setting out matters of evidence as to the probative facts, which go to establish that ultimate fact; and an allegation that the defendant claims an adverse estate or interest is sufficient, without further defining it, to put him to a disclaimer or an allegation and proof of the estate and interest which he claims—citing in support thereof Ely v. Railroad Co., 129 U. S. 291, 9 Sup. Ct. 293, 32 L. Ed. 688; Mining Co. v. Kerr, 130 U. S. 256, 260, 9 Sup. Ct. 511, 32 L. Ed. 906. See, also, Gage v. Kaufman, 133 U. S. 471, 10 Sup. Ct. 406, 33 L. Ed. 725.

It must constantly be remembered that the trial of suits of this character, under the provisions of the statute, is had in order to aid the government, through its proper department, in determining whether the applicant or adverse claimant is entitled to a patent. The government is not, strictly speaking, a party to the suit, but it is interested in the proceedings to the extent of having it not only established by the courts, under the evidence at the trial, which of the parties has the better or superior right to the land in controversy, but also whether there has been a full compliance with the mining laws, rules, and regulations; and if it should be found, upon the proofs, that neither of the parties to the proceeding has complied with the laws, it is the duty of the court to render a judgment against both. Jackson v. Roby, 109 U. S. 440, 442, 3 Sup. Ct. 301, 27 L. Ed. 990. It will thus be seen that the government acts upon the proofs established at the trial, and requires that certain facts must be found, whether alleged in the pleadings or not. For instance, no person, unless he is a citizen of the United States, or has declared his intention to become such, is entitled to a patent for mineral land. 1 Snyder on Mines, § 719, and authorities there cited. Several cases, which are cited in 20 Encyc. Pl. & Pr., supra, hold that citizenship must be proved—and found by the court—and, if this be true, it would have to be proven even if there were no averments in the pleadings. The pith of the opinions referred to is that the court must, in proceedings of this character, find as a fact, whether admitted or denied in the pleadings, that the applicant for a patent is a citizen. The reason given is that "citizenship is an absolute qualification to the holding of mineral land. The government grants its lands only to its citizens. Before it will issue its patent to any one, it must know positively that he is a citizen. Hence the necessity of showing by the judgment of the court the citizenship of the applicant." Burke v. McDonald, 2 Idaho, 646, 650, 33 Pac. 49, 50. Guided, as the court must be, by the earmarks furnished by the provisions of section 2326 as to the nature and character of the proceedings in the land office, and the object and purpose to be accomplished in actions or suits thereafter brought in courts of competent jurisdiction to determine the rights of the respective parties, and aided by the search-light of reason and authority, the conclusion is that enough appears in the bill of complaint to call upon the defendants to make answer thereto.

The demurrer is overruled.