(February 28, 1887.)

## BURKE ET AL. v. McDONALD ET AL.

[13 Pac. 351.]

MINING CLAIM—PLEADINGS—PRACTICE.—In proceedings under the Revised Statutes of the United States, sections 2325, 2326, to determine the right of adverse claimant to a mineral location, where the complaint is open to the objection that it states two causes of action, one legal and one equitable, and the defendant does not ·challenge the complaint by motion or otherwise, but consents to calling a jury and proceeds to trial as in an action at law, and both parties adduce their evidence on the questions of fact involved, it is then too late for the plaintiff to move to have the case declared a proceeding in equity, and to have it decided as such, without the intervention of a jury.

RIGHT OF POSSESSION OF MINING GROUND—ACTION AT LAW—JURY ALLOWED.—In proceedings under this act of Congress, the right of possession of the ground in dispute is the gist of the action, the thing to be tried and settled by the controversy, and such proceeding, in this territory, an action at law in which a jury may be demanded as a matter of right to try such controversy, and render a general verdict therein.

POSSESSION—WHO ENTITLED TO PATENT—ACTION TO DETERMINE.—So far as the form of action is concerned, it makes no difference who is in or out of possession. The proceeding is simply to determine which party, if either, is entitled to a patent, and in such a case, where the claim is asserted under a location, actual possession is not a material question.

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

A. E. Mayhew, W. B. Heyburn and W. W. Woods, for Appellants.

Courts of equity have no jurisdiction to determine the right of possession. They determine the title to real property, but where an action in the nature of ejectment will determine the controversy as to possession, it should be resorted to. (*Killian v. Ebbinghaus,* 110 U. S. 568, 4 Sup. Ct. Rep. 232.) In the case of *Connecticut Life Ins. Co. v. Lathrop,* 111 U. S. 612, 4 Sup. Ct. Rep. 533, the court reaffirms the doctrine by it theretofore held in the case of *Phoenix Ins. Co. v. Doster,* in

106 U. S. 32, 1 Sup. Ct. Rep. 18, that when a cause finally depends upon the effect or weight of testimony, it is one for the consideration of the jury, under proper instructions as to the principles of law involved. Trial by jury is never to be denied when the law governing the trial is susceptible of such a construction as to preserve it to the parties. Actions of ejectment do not affect the title to property, but the possession. (2 Estee's Pleadings, sec. 2268; *Long v. Neville,* 29 Cal. 131; *Marshall v. Shafter,* 32 Cal. 194.)

F. Ganahl, G. W. Stapleton, and Albert Allen, for Respondents.

By the organic act of the territory of Idaho the district courts are invested with chancery and common-law jurisdiction; the two jurisdictions are exercised by the same court, and under the legislation of the territory. (Code Civ. Proc., sec. 138, p. 26.) The modes of procedure up to the trial or hearing are the same whether a legal or equitable remedy is sought. The suitor, whatever relief he may ask, is required to state, "in ordinary and concise language," the facts of his case upon which he invokes the judgment of the court. (*Basey v. Gallagher,* 20 Wall. 679, 680.) Exceptions taken in the court below will be treated as waived unless the matters so excepted to are assigned as errors in this court. (*Purdy v. Steele,* 1 Idaho, 216; *Page v. Page,* 1 Idaho, 102; *Lampkin v. Sterling,* 1 Idaho, 122; *Fairbaugh v. Hasterson,* 1 Idaho, 136.) Actions of ejectment, it is true, "do not affect the title to property," "but the right to the possession as between the parties that is tried in ejectment, and this right is title." (2 Estee's Pleadings, sec. 2268; *Long v. Neville,* 29 Cal. 131; *Marshall v. Shafter,* 32 Cal. 194; *Holland v. Challen,* 110 U. S. 20, 3 Sup. Ct. Rep. 495.) The locator and claimant need not be in or remain in possession; possession depends upon location, and not location upon possession. (*Belk v. Meagher,* 104 U. S. 237-283; *Hauswirth v. Butcher,* 4 Mont. 307, 1 Pac. 714; *McKinstry v. Clark et al.,* 3 Mont. 395.)

BRODERICK, J.—This action was commenced under Revised Statutes, sections 2325, 2326, to determine the rights of

adverse claimants to certain mining ground situated in Sho-
shone county, Idaho. The complaint sets out the location by
plaintiffs of the Tiger lode mining claim, and that the defend-
ants claimed an adjacent mine called the "Poorman lode min-
ing claim," and that they (defendants) wrongfully caused a
survey of said Poorman claim to be made so as to cross upon
and overlap the said Tiger claim; that defendants made appli-
cation for a patent to said Poorman claim; that plaintiffs filed
in the land office their adverse claim to that portion of the
Poorman which overlapped the Tiger claim, and in due time
thereafter commenced this action to sustain their adverse claim.
The defendants answered the complaint, denying some of its
allegations, and admitting others, and then set up claim to and
right of possession in themselves to the area in conflict. At
the April term, 1886, of the district court, the cause came on
for trial. A jury was impaneled, without objection, and the
cause tried, as appears from the record, as an action at law be-
fore the court and jury. The jury, being unable to agree
upon a verdict, were discharged by the court. The defendants
then moved for a change of venue, but no order was entered
upon the motion.

The defendants next moved the court, "upon the pleadings
and all the evidence in the cause, that the court find the facts
involved, and render judgment accordingly, upon the ground
that it appears from all the evidence that the plaintiffs were,
at the time of the commencement of this action, in the pos-
session of, and at all times since have been and now are in the
possession of, the ground and premises in controversy, and on
the further ground that the evidence and pleadings show that
the action is a proceeding in equity, and not at law, and is one
peculiarly cognizable by the court, and should be tried by the
court." The court sustained the motion, and rendered its de-
cision upon the evidence and arguments adduced upon the trial.
To these rulings and decisions the plaintiffs excepted, and as-
sign the same as error. The appeal is from the judgment, and
the questions involved must be determined from the judgment-
roll.

The first question is as to the change of venue. The trial
court intimated its intention to change the venue to Kootenai

county, unless counsel agreed upon some other; but no order was made or entered, and hence there was no change, and the court did not lose jurisdiction.

The second and more important question for consideration is whether the court erred in holding that this was a case in equity, and rendering judgment accordingly. Ordinarily this question would not be difficult of solution. It could be readily settled from an examination of the pleadings; but in this case there are able counsel on either side, with years of experience in this class of cases, and it was not until after the preparation of the case, and a trial before the court and jury covering a period of several days, and an application by respondents for a change of venue, that this question of equity jurisdiction was first suggested. The complaint alleges that on the first day of November, 1885, and prior thereto, the plaintiffs were, and ever since have been and now are, the owners and in possession of the ground in controversy. In another portion of the complaint it is alleged that on the sixth day of November, 1885, the defendants wrongfully entered upon the disputed ground, ousted and ejected the plaintiffs therefrom, and ever since have withheld and still withhold the possession thereof from the plaintiffs, to their damage in the sum of $5,000. After some other averments as to an application for patent, etc., the complaint closes with a prayer for judgment that plaintiffs are the owners and entitled to the possession of the premises, the area in conflict, and for restitution thereof. While the one allegation in the complaint, of possession by plaintiffs when the action was commenced, and the other of ouster by defendants prior thereto, and continued possession by them, are inconsistent averments, yet, as the complaint states a cause of action, and was not questioned by motion or demurrer before trial, we think it too late, after the trial was commenced, to do so. (*Brown v. Martin,* 25 Cal. 88; *Kerr v. Hays,* 35 N. Y. 331.)

But counsel for respondents contend that the answer admits the possession of the premises to be in the plaintiffs, and that there was no issue as to possession to try. The portion of the answer referred to reads as follows: "2. Deny that on the sixth day of November, 1885, or at any other time, the

defendants ousted or ejected the plaintiffs from the ground and premises described in the second subdivision of the complaint, and deny that defendants withhold the possession thereof from the plaintiffs; but, on the contrary, defendants allege that the plaintiffs wrongfully withhold the possession thereof from defendants. 3. Admit that on or about the sixth day of November, 1885, the defendants filed field-notes, a diagram, and application for patent for the Poorman lode and mining claim in the United States land office at Lewiston, Idaho, and that such field-notes, diagram, and application included the land and premises described in the second subdivision of plaintiffs' complaint, and allege that the same were lawfully so included. Admit that they caused the register of said land office to give notice by publication of defendants' application for patent for said Poorman lode." The answer also denies "that the location of the said Tiger lode mining claim was ever marked upon the ground and premises described in the complaint as overlapped by the Poorman lode mining claim, or any part thereof."

While these pleadings are somewhat indefinite and uncertain, yet it is clear that the question whether the boundaries of the claims were so established as to conflict with each other was in issue, and also the right to the possession of the disputed ground. As we understand the answer, it admits that defendants were in possession of the Poorman, when the action was commenced, but denies that it overlaps the Tiger, and claims rather that the Tiger overlaps the Poorman. If this construction of the pleadings be correct, it follows that the right to the possession of the disputed ground was in issue, and this right of possession is the gist of the action—the only thing to be litigated between the parties. (*Gwillim v. Donnellan*, 115 U. S. 49, 5 Sup. Ct. Rep. 1110; *Killian v. Ebbinghaus*, 110 U. S. 568, 4 Sup. Ct. Rep. 232; *Wolverton v. Nichols*, 119 U. S. 485, 7 Sup. Ct. Rep. 289.) The right by which a mining claim is held before patent is a possessory right, which is acquired by discovery, location, and compliance with the laws of Congress, and local laws or customs not in conflict with the laws of Congress.

In *Belk v. Meagher*, 104 U. S. 283, Mr. Chief Justice Waite, in speaking for the court, says: "Congress has seen fit to make

the possession of that part of the public lands which is valuable for minerals separable from the fee, and to provide for the existence of an exclusive right to the possession, while the paramount title remains in the United States. In furtherance of this policy it was enacted by section 9 of the act of February 27, 1865, chapter 64 (13 Stats. 441; Rev. Stats., sec. 910), that no possessory action between individuals in the courts of the United States for the recovery of mining titles should be affected by the fact that the paramount title to the land was in the United States, but that each case should be adjudged by the law of possession."

Section 2326 (Act Cong., May 10, 1872), Revised Statutes 427, among other provisions, says: "It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment, and a failure so to do shall be a waiver of his adverse claim." We understand that an action to determine the right of possession as authorized by this act is in this territory an action at law. If so, the appellants were entitled to a jury, and the court erred in holding the cause was a suit in equity, and in denying the right to a jury trial. (*Killian v. Ebbinghaus*, 110 U. S. 573, 4 Sup. Ct. Rep. 235.) This view seems to have support in a subsequent statute upon this subject. The effect of the act of Congress of March 3, 1881, amendatory of original section 2326, was that the right of each party to the possession of the property should be tried and determined; and, if neither party established a right to the same, the jury should so find, and judgment should be rendered accordingly.

But it is contended that the form of action must be controlled by our territorial practice act. Section 476 of our Code of Civil Procedure reads: "An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim." We see nothing in this statute which attempts to prescribe any particular form of action in the class of cases we have been considering, or that can be construed against the views herein expressed. We do not decide what would

be the effect of this local statute in ordinary actions concerning real property, but only that it does not affect this cause. This is a special action, brought under a statute of the United States, and must be controlled by its provisions. (*Lee Doon v. Tesh,* 68 Cal. 43, 6 Pac. 97, and 8 Pac. 622.)

We are of opinion that the trial court erred in holding that this was a cause in equity, and in denying to the plaintiffs a trial by jury. For this reason the judgment is reversed, and cause remanded to the court below for a new trial in conformity with this opinion. So ordered.

HAYS, C. J., Concurring.—I think the rights of the parties to this proceeding purely legal, dependent upon their legal *status,* such as citizenship, and their having complied with the requirements of the mining laws and regulations. When this has been shown, they have a legal right to demand a judgment of the court that they are entitled to the "right of possession" of the premises in controversy, or so much thereof as the facts warrant, and upon the proof of this judgment they will be entitled to their patent, upon compliance with the other requirements of section 2326 of the Revised Statutes of the United States. All that was necessary to allege in the pleadings herein were the ultimate facts that would have authorized the respective parties to have made the required proof, showing such citizenship, and compliance with the requirements of law. It is immaterial whether they are in or out of possession of the premises at the time of the bringing of the action, as it is not an equitable proceeding to remove a cloud from or to quiet the title to realty; nor is it an action at law simply to recover possession thereof. It is to determine the right of possession alone; for upon that the patent issues, when the requisite proof and payment are made. The pleadings in this case, I fear, were so redundant as to have confused the parties, and misled the court. The purpose of our code is to secure clearness, conciseness, and truthfulness in pleadings, and thereby accuracy in the issue. I commend its spirit to the consideration of counsel.

I concur in the opinion that the judgment of the court below should be reversed, and that a new trial should be granted.

BUCK, J., Dissenting.—This case comes up on an appeal from the judgment, and the record properly before the court consists, under section 653 of the Code of Civil Procedure, of a copy of the notice of appeal, of the judgment-roll, and bill of exceptions. There are in the transcript papers and documents not properly a part of the record, and, under the decision in *Graham v. Linehan,* 1 Idaho, 780, such documents, improperly inserted in the transcript, cannot be considered. Looking into the record, it appears that this case came on regularly for trial upon the issues therein on the seventeenth day of May, 1886, at the April term of the district court, in Shoshone county, first judicial district; that a jury was impaneled to try the issues of fact therein, and, having failed to agree, were discharged; that, after the discharge of the jury, the defendant moved the court to find the facts, and render a decree thereon, on the ground that it was a proceeding in equity; that the plaintiffs objected to the decision thereof, claiming that it was a cause for a jury; that, after hearing arguments thereon, the court filed its findings of fact, and rendered decree therein, against the objection of plaintiffs, who duly excepted thereto.

The real question upon the appeal is whether the court had the jurisdiction to decide the case. The jurisdiction of the court is determined by the character of the issues in the case.

In *Basey v. Gallagher,* 20 Wall. 680, Field, J., says: "But the consideration which the court will give to the questions raised by the pleadings when the case is called for hearing, whether it will submit them to a jury, or pass upon them without such intervention, must depend upon the jurisdiction which is to be exercised. If the remedy sought be a legal one, a jury is essential, unless waived; if equitable, the court is not bound to call a jury; and, if it does call one, it is only for the purpose of enlightening its conscience, and not to control its judgment. The relief which equity affords must still be applied by the court itself."

This authority, coming from the supreme court of the United States, determines the law of the case upon this question. The jurisdiction, then, of the court to decide the case at bar depends upon the issues to be tried. These are determined by the pleadings—both complaint and the answer. Section 357 of our code

defines an issue to be a fact arising on the pleadings, maintained by one party, and controverted by the other. Section 359 defines an issue of fact to be a material allegation in the complaint controverted by the answer. An allegation not controverted is not an issue in the case. It is an admitted fact, to be considered as proven.

Looking, then, to the pleadings, we find the first allegation of the complaint to be as follows: "The plaintiffs complain, and for cause of action allege: 1. That on the seventh day of November, A. D. 1885, and long prior thereto, the plaintiffs were, and ever since have been, and now are, the owners, and in the possession, and entitled to the possession, of that certain quartz mine," etc., "called the 'Tiger lode,' " etc., describing the same by metes and bounds. The complaint is verified; and, under section 237 of our code, "if the complaint is verified, the denial of each allegation controverted must be specific." Section 259 provides that every material allegation of the complaint not controverted by the answer must, for the purposes of the action, be taken as true. Referring to the answer, the defendant denies as follows: "Deny that the plaintiffs now are, or ever have been, the owners of or entitled to the possession of the ground and premises described in the complaint." The allegation of plaintiffs, that plaintiffs are now in possession of said premises, is not controverted by defendants, and, by virtue of said section 259, for the purposes of this action, "must be taken as true."

The defendant has a right, in the conduct of his case, to rely upon its being taken as true, and I know of no power in the court to disregard this provision of the statute. In *Gay v. Winter*, 34 Cal. 160, Sanderson, J., in announcing the decision of the court, says: "Before entering upon the trial of an action it is of the utmost importance that all doubt, if such there be, as to the issues, should be removed. This is alike important to both parties and to the court. The plaintiff is entitled to an explicit denial of the material allegations of the complaint, or an admission of their truth, either by direct statement or by silence." In the case at bar the defendant remained silent as to plaintiffs' possession, and under the code said allegation is to be taken as true for the purposes of the action. Sanderson,

J., says: "It is quite as important for the defendant and the court as to the plaintiff that the issues should be settled in advance." ﹍I am unable to see how the court could disregard the rule of the code that plaintiffs' allegation was admitted and must be taken as true. See *Lillienthal v. Anderson,* 1 Idaho, 678, which is conclusive as to the admission.

The appellants claim that the pleadings set out an action in ejectment. I denominate the action to recover real property under the code ejectment, and the issue was out of law. But their allegation of possession of the premises described in the complaint, which under the code must be taken as true, precludes it from being ejectment. In *Kribbs v. Downing,* 25 Pa. St. 404, Black, J., says: "It is not without surprise that we find parties going back to the remote transactions of a former generation, and fishing up a lawsuit from an oblivion of fifty years. It is still stranger to see this done in the form of an ejectment for the whole of the original tract of land, when the plaintiffs are themselves in the actual possession of a part of it." Ejectment is a possessory action, and it cannot be maintained for land of which the plaintiff is himself in possession. If, then, the allegation of plaintiffs is taken as true, this cannot be ejectment.

It is claimed, however, that from a subsequent allegation in the complaint it appears that the plaintiffs are not in possession. (3 Wait's Actions and Defenses, 78.) The third allegation of complaint is as follows: "Plaintiffs allege that while the said plaintiffs were such owners, and so seised and possessed, and entitled to the possession, of said Tiger lode mining claim and premises, the said defendants did on the sixth day of November, 1885, without right or title, enter into and upon that said portion and part of the said Tiger lode mining claim last above mentioned and described, and oust and eject the plaintiffs therefrom; and ever since the said sixth day of November, 1885, have withheld, and still withhold, the possession thereof from the plaintiffs, to their damage in the sum of $5,000."

This allegation is evidently intended to set up ouster by defendants. It is in the form prescribed for that purpose. It alleges that defendants ousted plaintiffs, and still withhold possession thereof from plaintiffs. It does not allege that defend-

ants are in possession, but that they withhold the possession from the plaintiffs. What constitutes the withholding of possession in the mind of the pleader does not appear. Possibly the filing a claim for patent is in his estimation the withholding of possession. It is such an allegation as allows the pleader to evade the requirements of the statute. It is not direct and positive, as is the allegation of possession in plaintiffs. If intended to be so, it is contradictory. At best, it makes the complaint ambiguous and unintelligible. In such pleading the adversary may demur, on the ground that the same is ambiguous, unintelligible, and uncertain; or, if he thinks he can answer it intelligently, he may do so, and, in the event of a conflict between his construction of it and the pleader's, the pleading will be construed against the pleader. (2 Wait's Practice, 334; *Landers v. Bolton,* 26 Cal. 418.)

In *Clark v. Dillon,* 97 N. Y. 373, the court says: "A construction [drawing] of doubtful or uncertain allegations in a pleading which enables a party, by thus pleading, to throw upon his adversary the hazard of correctly interpreting their meaning, is no more allowable now than formerly; and, when a pleading is susceptible of two meanings, that shall be taken which is most unfavorable to the pleader." (*Clark v. Jones,* 49 Cal. 618.)

In *Landers v. Bolton,* above cited, Sawyer, J., says: "The allegations of a pleading are to be taken most strongly against the pleader. The presumption is that he will state his case as strongly in his own favor as the facts will justify." (2 Wait's Practice, p. 334, sec. 1; *Bates v. Rosekrans,* 23 How. Pr. 102.)

In *Nation v. Cameron,* 2 Dak. 362, 11 N. W. 525, the court says that "ambiguities arising on the face of the pleadings are to be construed against the pleader."

In *Burke v. Water Co.,* 5 Morr. Min. Rep. 211, an action in ejectment, the court says: "The complaint charges that the defendant, the Table Mountain Water Company, was in possession. The answer of the company does not deny this averment. This admission is conclusive evidence of the fact admitted." In the case at bar the plaintiff alleges possession in himself, and the defendant does not deny it. Is not the admission equally conclusive? Can he deny possession upon the trial, against his own allegation in the complaint?

In *Butler v. Kaulback,* 8 Kan. 672, the court says: "Facts admitted by the pleadings cannot be disputed by the evidence, but must.be taken as true for the purposes of the action. It is impossible that a thing be true and untrue at the same time."

In *Board v. Shaw,* 15 Kan. 34, the court says: "On the trial of a cause the whole pleadings are considered together; and, where two allegations of the same party are inconsistent with each other, the allegation most unfavorable to such party will be deemed to override the other allegation." To the same effect, *Natchez v. Minor,* 9 Smedes & M. 544, 48 Am. Dec. 731, and *Burrows v. Yount,* 6 Blackf. 458, 39 Am. Dec. 439.

The pleadings are not merely construed most strongly against the pleader by the courts, but it was the province of, and, indeed, it is necessary for, the defendant to construe the allegations of the complaint in making his answer. In *Clark v. Dillon,* above cited, the court says: "It is in the nature of things that a party who is required to frame his issues for the information of his adversary and the court must be responsible for any failure to express his meaning clearly and unmistakably. While it is competent for a party to move to make the pleadings of his adversary more definite and certain, yet, inasmuch as it is the primary duty of the party pleading to present a clear and unequivocal statement of his allegations, the onus of having them made so cannot be cast upon his adversary by his own fault in failing to perform his duty."

In the complaint in the action at bar there is a positive allegation of possession in the plaintiff of the premises in dispute and an equivocal allegation of possession in defendant, and ouster by defendant. The defendant, in answering, exercised his prerogative in the interpretation of the allegations in the complaint, admitted possession in plaintiffs, and denied ouster and possession in himself; and, under our code, possession in plaintiffs must be taken as true for the purposes of this action. The court, in determining the character of the action to be tried, must do so upon an inspection of the issues made by the pleadings. If it be true that an action of ejectment cannot be maintained by one in possession of the premises in controversy, it follows that the case at bar is not in the nature of an action in ejectment, and that the title to the disputed premises cannot be

determined by this action under the issues made in the pleadings, except it be considered an action to determine the adverse claim of defendants to the premises in dispute under section 476 of our code. "This action is brought under section 2326 of the United States Statutes, to determine the adverse claim of parties to the mining claim in dispute." Section 476 of our code provides that "an action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim." Under such provision of the code, action may be brought by one in possession. This action is denominated an action to quiet title, and "is the converse of the legal action of ejectment." (Pomeroy's Remedies, 415.) In many states this action is confined to parties plaintiff in possession. Under our code the plaintiff may be either in or out of possession, and the adverse party must claim an interest adverse to the plaintiff. In *Curtis v. Sutter,* 15 Cal. 262, Field, J., says: "It enlarges the class of cases in which equitable relief could formerly be sought in quieting title." In Pomeroy's Equity Jurisprudence (volume 3, page 435, section 1399) the principle is stated that equity will exercise this jurisdiction where the estate or interest is legal, when the remedies at law are inadequate. In the case at bar, the plaintiff being in possession, the legal action of ejectment cannot be maintained, and the remedy at law is inadequate, unless all the rules of practice are to be subverted.

It is intimated that in order to apply section 2326 of the United States Statutes, it may be necessary to vary some of the established rules of practice. That section, however, requires that an adverse claimant must commence proceedings in a court of competent jurisdiction to determine the controversy between the adverse claimants. The claimant must commence proceedings according to the rules of practice of the court in which the action is brought. If the claimant is out of possession, and his adversary in possession, ejectment is the appropriate remedy. If he is in possession, his appropriate remedy is action to quiet title.

In *Four Hundred and Twenty Min. Co. v. Bullion Min. Co.,* 9 Nev. 240, the court says: "Congress did not, by section 2326, or by the acts of July 26, 1866, of July 9, 1870, confer any ad-

ditional jurisdiction on the state courts. The object of the law, as we understand it, was to require parties protesting the issuance of a patent to go into the state courts of competent jurisdiction, and institute such proceedings as they might, under the different forms of action therein allowed, elect, and try the right of possession. Said section does not prescribe a different form of action. If the parties protesting are in possession of the ground in dispute, they bring their action under section 256 of the Civil Practice Act, or, if they have been ousted from the possession, they should bring their action of ejectment. We are of the opinion that when the action is brought, whatever may be its character, it must be tried by the same rules, governed by the same principles, and controlled by the same statutes, that apply to such actions in our courts."

This is a clear and comprehensive exposition of the statute as understood by one of the highest courts upon the Pacific coast. I know of no decision of the supreme court of the United States, or of the states or territories, which holds that a different practice should prevail.

If ejectment is not the appropriate remedy, and an action to quiet title is, the only question remaining is, To what jurisdiction does this action belong? Pomeroy, in his Equity Jurisprudence (volume 3, section 1393), says it belongs to the original general jurisdiction of equity. Of this there will be no controversy, unless, indeed, it is contended that there is something in section 2326 which changes this remedy from the equity to the law side of the court. It may be argued that this would deprive the parties of the benefit of a jury trial. This would be equally true of all equity cases. I see no reason in the nature of the questions involved which would not apply with equal force to an action of divorce, to reform a written contract on the ground of mutual mistake. The time may come when, under the law, all questions shall be submitted to a jury. At present the law is otherwise, and the court must apply the law to the issues made by the pleadings as it exists. If the issues made are equitable, then, under the authority of *Basey v. Gallagher,* 20 Wall. 680, a jury was discretionary with the court, and their findings but advisory only. Exercising its discretion, the court, upon the trial, submitted the issues to a jury. They

having failed to agree, the court, exercising its equitable powers, as is common and appropriate in such cases, found the facts in the case, and rendered a decree thereon. There was nothing exceptional in this action. Indeed, the procedure by action to quiet title is the usual one adopted under circumstances like those set forth in the pleadings in the case at bar. (*Merced Min. Co. v. Fremont,* 7 Cal. 317, 68 Am. Dec. 262; *Pralus v. Mining Co.,* 35 Cal. 34; *City of San Diego v. Allison,* 46 Cal. 162; *Milligan v. Savery,* 6 Mont. 129, 9 Pac. 894.) In *Wolverton v. Nichols,* 5 Mont. 89, 2 Pac. 308, the court says: "If the plaintiff is in possession, it may be a question whether, indeed, equity does not afford the only remedy appropriate in this case."

Section 2326 has the same effect upon the parties claiming the mine that an order of interpleader does upon the parties affected thereby. (3 Estee's Pleading and Practice, 235, sec. 4529.) The United States holds the title to the premises in dispute, and is ready to transfer to either claimant entitled to receive it; and it directs, in this statute, that they commence an action within a given time to settle their respective claims thereto. This is in precise analogy to an order of interpleader in a court of equity. To this relief in equity there are four essential conditions given in Pomeroy's Equity Jurisprudence (section 1322), as follows: 1. The same thing must be claimed by all the parties. (The thing demanded in this controversy is the mining claim in dispute.) 2. All their adverse claims must be derived from a common source. (The adverse claimants in the case at bar claim from the United States.) 3. The person asking the relief must have a claim or interest in the controversy. (The United States has no interest other than to transfer the title to the one adjudged to be entitled to it.) 4. The party praying for interpleader must be indifferent between the parties—merely a stakeholder. (The United States is indifferent in this controversy.) Finally (section 1325), the stakeholder must have the thing in his possession, ready to deliver it upon a decree determining who is entitled to receive it. Section 2326 provides that the United States will deliver the patent to the one whom the judgment declares is entitled to it.

For these reasons, I dissent from the opinion of the court.

He brings his action to quiet title. If not in possession, his action is in ejectment. The plaintiff was nonsuited because the court held he had not proven possession in himself. The supreme court of the United States, in reviewing the case in a decision brought to the attention of this court, and much relied on, overrules the decision of nonsuit on the ground that the evidence established possession in plaintiff, but recognizes the propriety of the action as brought. I think no case has been cited upon the brief or in the arguments that holds that an action to quiet title is not the appropriate remedy by a party alleging possession.

## ON PETITION FOR REHEARING.

BRODERICK, J.—Since announcing the opinion in this case, counsel for respondent have petitioned for a rehearing. In support of this application, numerous authorities have been cited, but very few of them throw any light on the question we have been considering. As on the hearing, much theorizing has been indulged in on the law of ejectment as it formerly existed and now exists; but we are still unable to see the application of these rules of law to the case at bar. The common-law form of ejectment, with all its fictions, has long since been almost entirely superseded by statutory enactments, so that now, in most of the states and territories, there is substituted an action to recover specific real property, or to recover the possession of real property; which are clearly legal actions. The action to recover real property implies that the defendant is in actual possession by himself or tenant; hence, when it appears upon the trial that the defendant was not in possession when the action was instituted, the plaintiff will be nonsuited. But that is not this case, and there is very little analogy between the two. This is an action to determine the right of possession; and it makes no difference, so far as the form of the action is concerned, who is in possession. We think this view is amply sustained by the authorities.

In *Lee Doon v. Tesh,* 68 Cal. 43, 6 Pac. 97, 8 Pac. 622, the supreme court of California, in considering a case brought under this act of Congress, says: "The action is not brought to recover possession of the property, or damages for trespass there-

on, or to quiet title thereto, but is a special action to determine the right of possession preliminary to the right to purchase from the United States." In *Steel v. Mining Co.,* 18 Nev. 87, 1 Pac. 448, Hawley, C. J., in considering the same question, says: "These actions may be brought by the plaintiff, whether he is in or out of possession of the mining ground in controversy; and the only sensible construction of the law is that each party must prove his claim to the premises in dispute, and that the better claim must prevail." To the same effect is *McGinnis v. Egbert,* 8 Colo. 41, 5 Pac. 652.

Here are the latest adjudicated cases from the three great mining states of the Union, all agreeing that this is a special action, not to recover possession or to quiet title, but to determine who has the right of possession, or, in other words, to determine who is entitled to a patent to the disputed ground. This is the object of the action, and this object must not be lost sight of.

Section 2325 of the Revised Statutes provides how any person entitled to a patent to a mining claim may procure the same where there is no adverse claim. The applicant must show, by his verified application and other proofs, that he has complied with the law in locating, marking the boundaries, etc.; that he has performed the necessary labor, and has in all other respects observed the requirements of the law. After notice of the application has been duly given by the register of the land office, if no adverse claim has been filed, the applicant will be entitled to and will receive his patent. It will be observed, from an examination of the statute, that the applicant who claims under a location is not required to show actual possession of the claim in order to entitle him to a patent therefor. "Actual possession of a claim is not essential to the validity of the title obtained by a valid location." (*Belk v. Meagher,* 104 U. S. 279.)

When, during the period of publication, an adverse claim is filed, the proceedings in the land office are stayed, and the controversy is transferred to the court for the trial of the questions necessary to determine who is entitled to a patent. In the land office the controversy is between the applicant and the United States. When transferred to the court, the controversy

is between the several claimants and the United States; but the same questions are tried that would have been had the proceeding remained in the land office, except that the rights of an additional party or parties must be adjudicated in the court. But under the statute there is no issue as to the actual possession of the claim to be tried. It is not an issuable fact in the controversy; and, if it enters into the trial at all, it is only incidentally. It seems to us that any construction of the statute that would make the form of the action dependent on the question of actual possession would, in effect, interpolate into the statute a condition precedent to obtaining a patent to a mining claim which Congress has not seen fit to impose.

Clearly, then, the question to be tried in this case is: 1. As to the qualifications of the respective parties to hold such property by patent; and 2. The right to the possession of the disputed ground; and, if the jury find in favor of either, the general verdict should be, in substance, that such party has the right of possession to the ground. This strips the action of all fiction and technicality, and determines the facts which the commissioner of the general land office must know before a patent issues—namely, who, if anyone, is entitled to it. By the amendatory act of March 3, 1881, if, on the trial, neither party establishes a right of possession to the claim, or any part thereof, the jury is required to so find, and neither party will be entitled to a patent. This act indicates clearly that the general government is not a mere "stakeholder," but that it has an interest in these controversies.

Counsel seem to place much reliance on *Four Hundred and Twenty Min. Co. v. Bullion Min. Co.,* 9 Nev. 248, and *Milligan v. Savery,* 6 Mont. 129, 9 Pac. 894. The former case was decided before the supplemental act of March 3, 1881, and has since been essentially modified in *Steel v. Mining Co., supra.* The Montana case has been in effect overruled by the supreme court of the United States in *Wolverton v. Nichols,* 119 U. S. 485, 7 Sup. Ct. Rep. 289.

We are also referred to *Basey v. Gallagher,* 20 Wall. 680. The subject of the controversy in that case was a water ditch, or damages for a wrongful diversion of water, and we cannot see that it is authority in this case.

It is also contended that the words of the statute, "commence proceedings in a court of competent jurisdiction," etc., are significant. We think this means a court of general jurisdiction, whether federal, state, or territorial. In the territories the district courts are courts of original general jurisdiction, and in these courts a jury trial is allowed as a matter of right in all cases where it was allowed at the common law. This right is secured by the organic acts. (*Chambers v. Harrington,* 111 U. S. 351, 4 Sup. Ct. Rep. 428.)

It is unnecessary to pursue this subject further. We are still satisfied with the conclusions reached in our former opinion herein. Application for a rehearing denied.

Hays, C. J., concurring.